IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY LYNN ANN RATLIFFE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-1622 |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

Kelly Lynn Ann Ratliffe ("Ratliffe" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her claim for Supplemental Security Income ("SSI").[1] For the reasons that follow, Ratliffe's Request for Review will be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Ratliffe was born on August 28, 1981. R. at 28.[2] She has a high school education and can speak and understand English. Id. at 29. She has past relevant work as a landscape laborer. Id. On July 3, 2019, Ratliffe filed her fifth application for SSI pursuant to Title XVI of the Social Security Act. Id. at 16. She alleged that she became disabled on February 1, 2019, due to mental impairments. Id. at 16, 261. The application was initially denied on October 8, 2019 and was denied again upon reconsideration on December 24, 2019. Id. at 16. Ratliffe then filed a

---

[1]   In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 12, 15.

[2]   Citations to the administrative record will be indicated by "R." followed by the page number.

written request for a hearing on January 13, 2020.  Id.  A hearing regarding the denial of her SSI application was held before an Administrative Law Judge ("ALJ") on June 2, 2020.  Id.  On June 16, 2020, the ALJ issued a decision finding that Ratliffe was not disabled.  Id. at 30.  The Appeals Council denied Ratliffe's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 1-3.  Ratliffe then commenced this action in federal court.

## II.    THE ALJ'S DECISION

In his decision, the ALJ found that Ratliffe suffered from the following severe impairments: major depressive disorder, bipolar disorder, generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and borderline intellectual disability.  Id. at 19.  The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment.  Id.  The ALJ determined that Ratliffe retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform, use judgment, and tolerate occasional changes in a routine work setting defined as that consistent with routine and repetitive tasks."  Id. at 22.

Relying on the vocational expert who appeared at the hearing, the ALJ found that Ratliffe could perform her past relevant work as a landscape laborer.  Id. at 28.  The ALJ also found that there were jobs that existed in significant numbers in the national economy that Ratliffe could perform, such as warehouse worker, hand packager, or assembler of electrical accessories.  Id. at 28-29.  Accordingly, the ALJ found that Ratliffe was not disabled.  Id. at 30.

## III.   RATLIFFE'S REQUEST FOR REVIEW

In her Request for Review, Ratliffe contends that the ALJ's decision was not supported

by substantial evidence because the ALJ failed to properly evaluate the opinion of her treating psychiatrist.

IV.     **SOCIAL SECURITY STANDARD OF REVIEW**

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).  The court's review is plenary as to the ALJ's application of legal standards.  Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a

physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1); accord id. § 1382c(a)(3)(A). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted); accord id. § 416.920.

**V.    DISCUSSION**

Ratliffe alleges that the ALJ failed to properly evaluate the opinion of treating psychiatrist Syed Ibrahim, M.D., and failed to adequately explain his findings on the opinion. Pl.'s Br. (Doc. No. 18) at 3-15. She argues that, by failing to properly evaluate Dr. Ibrahim's opinion, the ALJ also failed to properly evaluate whether Ratliffe did or did not meet or medically equal all of the criteria for a mental listing. Id. at 11-12; Pl.'s Reply Br. (Doc. No. 20) at 4.

4

Under applicable regulations and controlling case law,[3] when considering a medical opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Id. § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Heisey v. Saul, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(2).

On January 27, 2020, Dr. Ibrahim completed a mental capacity assessment form, in which he opined that Ratliffe had marked limitations in the ability to follow one- or two-step oral instructions to carry out a task, recognize a mistake and correct it, sequence multi-step activities,

---

[3] The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017. Lepperd v. Berryhill, No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. See 20 C.F.R. § 404.1520c. Because Ratliffe filed her application for SSI benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

use reason and judgment to make work-related decisions, set realistic goals and make plans independently of others, cooperate with others or ask for help when needed, and handle conflict with others.  R. at 950-52.  Dr. Ibrahim further opined that Ratliffe had extreme limitations in the ability to work at an appropriate or consistent pace, ignore or avoid distractions while working, sustain an ordinary routine and regular attendance at work, work a full day without needing more than the allotted number of rest periods during the day, adapt to changes, and manage psychologically-based symptoms.  Id. at 951-52.  He attributed these limitations to her ADHD, which caused her to have "difficulty adhering [to] and following through with finished tasks," her poor attendance while working, and the fact that others distracted her easily.  Id. at 950-51.  Dr. Ibrahim further pointed to Ratliffe's continuing effort to work on managing her symptoms of depression, anxiety, ADHD, and PTSD and "periods of abandoning her personal hygiene" to support these findings.  Id. at 951.  He stated that Ratliffe "does not ask for help . . . [,] does not accept criticism well, and . . . will be triggered by past trauma."  Id. at 952.

The ALJ determined that Dr. Ibrahim's opinion was not persuasive because "he did not complete all the sections of the [medical capacity assessment] form and his conclusions are not consistent with the record as a whole."  Id. at 27.  The ALJ stated that Dr. Ibrahim's initial evaluation and treatment notes did not show acute symptoms and did not support a finding of marked or extreme limitations in any area of mental functioning.  Id.  He also found that the "nature and exten[t] of the treatment prescribed by Dr. Ibrahim" was not consistent with the limitations in Dr. Ibrahim's opinion.  Id.  This finding is supported by substantial evidence.

At Ratliffe's only evaluation with Dr. Ibrahim on May 16, 2019, the psychiatrist observed that Ratliffe was cooperative and interactive with an appropriate mood.  Id. at 835-36.  He indicated that Ratliffe had a normal thought process, intact judgment, insight, attention, and

knowledge, average intelligence, and a fair ability to express herself. Id. Ratliffe's only complaint at the evaluation was that she needed medication. Id. at 832. Dr. Ibrahim continued Ratliffe's existing medication regimen and recommended she continue to see a therapist. Id. at 839. The extreme and marked limitations opined by Dr. Ibrahim are unsupported by this sole interaction between him and Ratliffe. Although he indicated that Ratliffe had multiple marked and extreme limitations in her mental capacity, his evaluation and treatment plan demonstrated that Ratliffe presented appropriately, had normal cognitive function, and needed no acute intervention or intensive care. Id. at 835-39.

The ALJ's finding is also supported by the inconsistency between Dr. Ibrahim's opinion and other opinion evidence in the record. Psychological consultative examiner Debra Mashberg, Ph.D., and state agency psychological consultants Paul Taren, Ph.D., and Karen Plowman, Psy.D., opined that Ratliffe had only mild and moderate mental limitations, which the ALJ found persuasive. Id. at 27, 96-97, 114-16, 934-41. The ALJ found Dr. Mashberg's opinion partially persuasive because it was based on only one interaction but was consistent with her clinical examination observations and the record as a whole. Id. at 27. The ALJ found Drs. Taren and Plowman's opinions persuasive because they were consistent with and supported by the record and consistent with Ratliffe's reported level of activity and "the nature and extent of treatment prescribed by the treating mental health sources." Id.

Moreover, the inconsistency of Dr. Ibrahim's opinion with other medical evidence in the record supports the ALJ's determination that it was not persuasive. Ratliffe's management of her mental impairments with medication was characterized as "successful" and her mental status examinations were generally normal with reports of a depressed or anxious mood. Id. at 801-02, 835, 852, 854, 936, 989-90. At appointments with behavioral health providers, Ratliffe was

cooperative, engaged, and interactive, and had a "good rapport" with her therapist. See, e.g., id. at 809, 825, 829, 835-36. Her therapy objectives included identifying barriers to self-esteem, using positive self-talk, and journaling to enhance coping with past trauma. Id. at 823-24. She was hospitalized in December 2019 for suicidal ideations coinciding with the use of cocaine and benzodiazepines but has otherwise remained stable without acute intervention or intensive care. Id. at 23-28, 989-90.

      Ratliffe argues that Dr. Ibrahim's opinion is supported by and consistent with the record, which she supports with numerous citations. Pl.'s Br. at 5-8; Pl.'s Reply Br. at 3. Ratliffe's assertion that other specific clinical evidence supports Dr. Ibrahim's opinion appears to be a request that the Court reweigh the evidence. This Court, however, is not authorized to reweigh the evidence de novo, Monsour Med. Ctr., 806 F.2d at 1190, but only to determine whether substantial evidence exists to support the ALJ's finding, Torres v. Barnhart, 139 F.App'x 411, 413 (3d Cir. 2005). As discussed supra, the ALJ's finding of persuasiveness is supported by substantial evidence and thus, Ratliffe's argument fails.

      Ratliffe further argues that the ALJ failed to provide an "adequate discussion of the supportability and consistency factors" with regard to Dr. Ibrahim's opinion. Pl.'s Br. at 10-11; Pl.'s Reply Br. at 2-3. She contends that the ALJ "engage[d] in no substantive discussion" and "provide[d] no further explanation as to how [Dr. Ibrahim's] opinion was not consistent with the record with specific reference to any evidence within the record." Pl.'s Br. at 11. While it is essential that an ALJ set forth reasons for his or her decision, an ALJ is not required to use particular language or adhere to a specific formula or format in conducting the analysis. Jones, 364 F.3d at 505. The ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review." Diaz

v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).  In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions.  R. at 22-27.  The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.

Indeed, the ALJ's failure to cite specifically to the record in the paragraph about Dr. Ibrahim's medical opinion—instead referring to "the record as a whole"—does not indicate that the ALJ did not have substantial evidence to support her findings.  Id. at 27.  An ALJ is required neither to articulate how he or she considered all of the persuasiveness factors in an RFC analysis nor to cite to every supportive document in the record.  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records[.]  [W]e do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law."); 20 C.F.R. §§ 416.920c(b)(1)-(2) (stating that the ALJ will explain how he or she considered only the supportability and consistency factors for a medical source's medical opinion); see also Phillips v. Barnhart, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it").  Here, the ALJ explicitly considered the supportability and consistency factors relative to Dr. Ibrahim's opinion by stating that the opinion was not supported by his evaluation and treatment notes and was inconsistent with the record as a whole.  R. at 27.  The ALJ had no further responsibility to cite to the record, which contained over 1,000 pages.

Ratliffe also argues that the ALJ's failure to explain his statement that Dr. Ibrahim's opinion was not persuasive "because he did not complete all sections of the form" is legal error. Pl.'s Br. at 9-10. She asserts that the ALJ found "the entirety of Dr. Ibrahim's opinion unpersuasive due to Dr. Ibrahim not checking two boxes of twenty-two requested with no explanation." Id. at 10. However, as discussed supra, the ALJ did not rely solely on Dr. Ibrahim's failure to complete the medical capacity assessment form in determining that his opinion was not persuasive. The ALJ considered the entire record, which included other medical opinions and extensive treatment notes, and Dr. Ibrahim's own evaluation and treatment plan. R. at 27. Regardless of the ALJ's reference to Dr. Ibrahim's failure to complete the form, the ALJ adequately explained the supportability and consistency factors and his decision was supported by substantial evidence.

Finally, Ratliffe asserts that the ALJ's failure to properly evaluate Dr. Ibrahim's opinion resulted in a failure to properly evaluate whether she met listed impairments 12.04 (affective disorders), 12.11 (ADHD), and 12.15 (PTSD). Pl.'s Br. at 11-15. She argues that the ALJ "failed to consider ample evidence" supporting severe limitations and that, if he had considered this evidence, she "would have been found to have met listings 12.04, 12.11, and 12.15 after meeting at least one extreme limitations or two marked limitations as required by the regulations[.]" Id. at 14. She offers citations to evidence to support her argument that Dr. Ibrahim's opinion was persuasive. Id. at 11-14. However, Ratliffe's argument that she "would have" met the listings if Dr. Ibrahim's marked and extreme limitations were included requires Dr. Ibrahim's opinion to have been considered persuasive. The ALJ found that Dr. Ibrahim's opinion—and the limitations within it—were unpersuasive. R. at 27. As discussed supra, this finding is supported by substantial evidence.

## VI. <u>CONCLUSION</u>

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Request for Review will be denied and dismissed. An appropriate order follows.

Dated: February 28, 2022

BY THE COURT:

<u>/s/ Marilyn Heffley</u>
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE